Mr. Zenger, whenever you're ready. You're reserved three minutes for your rebuttal, Tony. Yes, Your Honor. Thank you. Thank you. May it please the Court, my name is Todd Zenger. I'm from Curtin-McConkie here on behalf of the appellants, Dave and Jacqueline Probert. We believe that there were a number of errors that were committed below in this case. And a lot of them are highly factual intensive based on what was going on in the case, orders that were in place, and significantly orders that were not in place at the time certain briefing was required. We believe that the District Court below erred by not following Tenth Circuit standards, and specifically in the Aaron Haas v. Reynolds case at 965 F. 2nd, 916. Am I understanding your argument right? You think the error was that it wasn't enough for the motion to be unopposed, but rather the District Court had to at least assess what was introduced and make sure it met the summary judgment standard. Partially, yes. That and other matters. Okay. That's the argument you were just now making. That's part of it, yes. Yes, Your Honor, it is. Well, we review judgments, not opinions, and so if I were to look at their summary judgment papers and say they make out a prima facie case of entitlement to summary judgment in the absence of any opposition, why couldn't I affirm? For the following reason. First of all, the cases that were cited are cases in which the District Court did make necessary findings below. For example, both the DuPay case, the Glaxo case, and the Granite case were all cases in which the District Court made findings below. We don't review findings. And this is summary judgment, which we review de novo on top of it, so there are no actual fact findings that ever get made in the context of summary judgment. So the only thing the court below would have needed to do under the circuit court precedent, as I understand it, is to have evaluated their papers to assure that they make a prima facie case of entitlement to summary judgment. And why can't I just do that on appeal? It's de novo. It's a matter of law. Why do I need to send it back to the District Court to have the District Court do that in the first instance? Because what the District Court needed to do in the first instance was establish certain facts. The defendants in this case have asserted both anticipation and obviousness. Anticipation is a question of fact. What the prior art reveals and teaches is a question of fact. Identity of invention on the way to anticipation is a question of fact. It was summary judgment, so what the court was determining below was that there's no genuine issue of dispute over those facts in light of an unopposed motion, that the evidence and the argument presented in their summary judgment brief in the absence of any opposition is adequate to establish entitlement to summary judgment because you didn't present any genuine issue of fact that's in dispute. And so I'm... I think that would be the governing rule in the Reid case that we cited in our paper. But in the Ehrenhaus case versus Reynolds, it said that before the court is going to take the extreme step of dismissing a case, that they should look at five factors. And it's those five factors which we cited in our reply brief at page 7, which the district court did not do. And so, yes, you are correct. It is up to the district court to determine whether there was a prima facie case. But overlaying that standard which you have basically recited, which I understand to be the Reid case, which we also cited in our brief at page 6, is the Ehrenhaus versus Reynolds case. But I guess I'm not understanding it. My understanding of the case law was you've got this Ehrenhaus line of cases, the Mead line, and that applies when there's a judgment, you enter a judgment as a sanction for failure to defend a prosecuted case. That's right. That may be, let's assume for the sake of argument, what Judge Benson did here, but they need to make these five factors. But my understanding of the case law is if you're not using it as a sanction for failure, but under the Reid line of cases, as Judge Moore submitted, you look at the summary judgment motion. It's unopposed because let's assume we affirm the 56F denials of your responses. And it seems to me Reid applies. This isn't an Ehrenhaus case where you're applying a sanction. This is purely a summary judgment case. There's no terminating sanctions here, right? Well, I believe it's the effect of terminating sanctions because what happened was we had Correct. There were no sanctions. There was no monetary sanctions or otherwise. There were attorneys' fees also granted. But it has the effect of terminating sanctions, and that's why we believe the Ehrenhaus should apply because what was the status of the case at the time that this whole thing arose? We had pending a Rule 56F motion which had not been granted. I would have thought you would have opened up your argument on that basis. The Rule 56 motion is erroneously denied, and go from there, right? So if you can overcome the erroneous denial of the 56F motion, then you're right back to 56. Well, that is one of our points that the Rule 56 was pending, and the Rule 56F was pending, and it was improperly denied. But another fact that's important here is this was a case that was, as it proceeded through the beginning part of 2009, there were numerous motions pending. There were numerous times when the scheduling order and the briefing orders were changed. And then, in addition, the court called in June saying, do you want a hearing? To which I responded, yes. Are you going to file a brief? To which I responded, yes. At no time did they say, get it in in two days or three days or five days or ten days. And then the paper went in within 10 or 12 days after that. The point here — Well, is the court supposed to schedule it? Don't you have a scheduling order that you have to follow? Yes, sir, we do. But that's the reason why, in the context of a pending Rule 56F motion, the briefing schedule was subject to that Rule 56F motion. So we believe that Rule 56F motion was improperly denied. How many 56F motions did you file? Two. So there were two filed. Yes, sir. And the rationale for the filing of the 56F motions? They were both asking for extensions of time. Yes, sir, they were. because the entirety of defendants' invalidity arguments hinged on the opinions expressed by one individual who they held out as an expert. And that individual was eventually deposed, as can be seen in — Did you miss your own deadlines? Even assuming that the judge had given you the deadlines you were requesting for, you even missed those, didn't you? There were some that I did miss, yes, ma'am. There were. The significant point being here is, as reflected in our opposition, that was of record before the Court entered its order, clearly showed that the very person that they were relying on, and this is what we asked the time to prove, A, wasn't an expert at all in this prior art, or in this art, and, second, didn't know even what the standards were to establish whether something was anticipatory or not. And so we asked the Court for permission to do that. And why did we ask — It struck me that you were asking for a qualification of the facts, those 18 facts that you allegedly were asking for. Right. If they're factual determinations, then you can certainly challenge those, right? You should have submitted your Rule 56 answer at that point in time. We did do that. If you knew what they were, you listed them. In fact, we did, because those are the things that we needed time to assess. And then, so we assessed those when we took a deposition, and then we get a deposition transcript back, and we simply inquired of the defendants, please have your witness signed so that we can rely on this deposition, which they refused to do and refused to do and refused to do and refused to do, because we wanted a record as to what he was going to say and then not change it sometime after he reviewed — What basis to review 56F? Is it an abuse of discretion by the district court? Just on his denial of your 56F motion. The standard on review of 56F motion? I believe it's an abuse of discretion. Let's assume we don't agree with you on the 56F. Is there anything left to the point that Judge Moore raised earlier? Therefore, what we've got is a summary judgment motion that's essentially unopposed. Yes. And is the court not free to evaluate that in terms of whether or not there's a factual disputing scenario? Well, yes. The fact that the Rule 56F motion was still pending and the fact that there was further communication with the court giving us more time to file the brief. So those two things. Because the 56F motion was not decided until the court's July 17th order. And that was still after we had submitted our opposition brief. And in the meantime, the court had communicated with us saying, do you want a hearing? To which we said yes. We were never granted a hearing. And second, are you going to file a brief? Yes. And there was no requirement as to when the brief went in. And so based upon the brief. Could you have waited six months to file a brief? Excuse me, sir? Could you have waited six months to file a brief and still be timely? Yes, sir. Because we had filed timely motions. We filed a timely motion in February. We filed another motion in April. And there had been orders in the between time to change the scheduling order, the pretrial order, and the briefing schedules. In the rule 56F motion you filed in April, did you identify the facts that you needed to obtain and explain how you were going to get them before you could respond with an opposition? I don't believe that we had indicated with the same specificity as we did in our first paper. Tell me where I can find that in the briefing. Show me what you did allege specifically because you rewrite the rule 56F for you to be entitled to an extension of time that the typical court precedent requires you to articulate the facts that you are in need of obtaining and the means by which you intend to obtain them. That is correct. Okay. So show me your second rule 56F motion, exactly what allegations you made to satisfy that rule. Because I couldn't find it. Maybe I'm not looking at the right document. I want you to direct me to it. Okay. Let me see if I can put my finger on it. It begins in the appendix at A969. What page number? A969. 8969? Sorry, 969 of the appendix. Thank you. Thank you. Thank you. Can you answer Judge Moore's question? Yes, I'd like to answer it now, but I've had a chance to quickly review this. Thank you. The paper, this further motion for rule 56F, does not outline the 18 factual questions that we had earlier or specifically identify such. But it also acts as a request for an extension of time. It's expressly stated a number of times that the plaintiff's request a further extension of time in which to respond to Clorox's motion. So even if it technically did not and specifically recite specific factual allegations, I think the court could have looked at it and deemed it as a request for an extension of time. So if it doesn't meet the standard of rule 56F because it doesn't articulate the facts that are necessary and the means by which you intend to obtain that information, then the court should have treated it as a motion for extension of time. You realize, of course, that the court's denial of a motion for extension of time after presumably you already got one and there's been a lot of delay and you missed your own deadlines, you're looking at an abuse of discretion standard and that seems to me infinitely even more difficult for you to prevail upon. I don't think it does in this case in the circumstances where there were a number of motions for summary judgment pending. This case was clearly contested. This wasn't as if the plaintiffs were just sitting around doing nothing. Between December and June, there were some 83 docket entries. The parties were working, and I'm not going to say that these plaintiffs, these two teachers, have the resources of Clorox, and we were doing the best we could under the circumstances. In the circumstances, we had communication with the court, and the court asked us, do you want a hearing? We said yes. Are you going to file a brief? We said yes. And that brief was filed before any order came out, and we understood that to mean that there was not a hard and fast deadline for us to respond to that motion and that in light of having this further motion under Rule 56F or whether it's construed as a motion for an extension of time, those were timely filed. And the reason why, in that context, we believe that the proper authority is the Ehrenhaus case is we effectively have here a terminating sanction for what is just a brief that was not inordinately late in a case that was barely one year old. Mr. Zender, you've used up a substantial portion of all of your time. We'll restore two minutes of your body time. Thank you very much, Mr. Wright. Good afternoon, Your Honors. May it please the Court. My name is David Wright of Workman Nidegger on behalf of the Applebee, the Clorox company in this case. And if I may, in answering some of the questions that were posed to Counsel for Appellant, provide a citation to the Court. This is, I believe, in the briefs, but it's Building and Construction Department v. Rockwell, that's 7F 3rd, 1487. That sets forth the standard of review in connection with the District Court's denial of the request for a 56F motion. Why isn't this case effectively a terminating sanction case? Because, I mean, I don't see where the Ehrenhaus factors were found by the lower court. You agree that the Ehrenhaus factors, there is no opinion that I'm missing where the Court analyzed those factors, correct? That is correct, Your Honor. So if this is a terminating sanctions case, then we would have to vacate and remand because under the Regional Circuit precedent, the District Court didn't do what it should have had to do, right? That is correct. So why isn't it effectively a terminating sanction in light of the attorney fee award? Well, I think the Reid case is instructive from the Tenth Circuit, and it explains, perhaps, appellate jurisdiction of motions for summary judgment and why it would not be tantamount to a terminating sanction case. And to be sure, there were sanctions issued by the Court in the decision with respect to the Rule 56F motions. There were some minimal attorney's fees that were required to be paid. But the essence was there was a grant of summary judgment. Now, what is the effect of that? This Court has a clear path under its state over-review to consider the record, and the Reid case clearly sets forth what the procedural context of that review would be. Did Reid involve any sanctions, attorney's fees, or anything? You know, I don't believe so, Your Honor. I don't believe so. I think that was just in the context of a motion for summary judgment in a wrongful termination case. What were the attorney's fees? Were the attorney's fees here just with respect to responding to the second 56F motion? That is correct, Your Honor. Specifically, in the order of the Court below, the attorney's fee sanction went to the filing, the abuse that was found by the Court to be in connection with the filing of the second 56F motion. So to answer Your Honor's question, there is a clear path. There is de novo review, and certainly in appellate jurisdiction, this Court reviews judgments, not decisions. Do you agree that Judge Benson mistakenly didn't look? He just granted judgment and dismissal in your favor without actually analyzing your underlying motion to be sure it at least alleged a prima facie case of entitlement to summary judgment. Like suppose you argued obviousness, but your motion didn't articulate any of the factors required to make a prima facie case. That would have been really problematic. But you agree Judge Benson didn't do that below. He didn't look into your motion and give us any sort of opinion that shows that he undertook that effort. I agree. There's no indication in the record as to what the decision-making was by Judge Benson other than he apparently had lost patience with delay. Well, on the 10th Circuit Law, shouldn't he send it back at that point for proper analysis by a district court judge? I think that that is an option. It certainly is within this Court's appellate review discretion. But what Clorox is urging this Court to do is to review the record in a de novo review and determine whether or not Clorox did meet its prima facie burden under Rule 56C. I'm sure you would like us to affirm it, but under Regional Circuit Law, 10th Circuit in this particular case, are we required to send it back, do you think? I don't think you're required. It's certainly an option to do that. And I think the cases of this Court are instructive. Well, we would have to follow 10th Circuit Law in this regard, right? You would have to follow 10th Circuit Law. So read and read, essentially? The read factors and the follow and read, the read factor analysis was not done? It was not done. However, I don't think that the issue in connection with the question is really an issue of procedural law. It's one really of what is within this Court's appellate review jurisdiction and discretion to do. And this Court has stated, for example, in the Glaxo case, 153 F. 3rd, 1366, at 1372, and I'll quote, When a matter comes before an appellate court following a summary judgment, the appellate court is free to adopt a ground advanced by the appellee in seeking summary judgment, but not adopted by the trial court. And specifically, citing a 7th Circuit case, granted not a 10th Circuit, but a case entitled Rueckert v. Internal Revenue Service at 775 F. 2nd, 208, at 212, a 1985 decision, it states, An appellate court may affirm a grant of summary judgment if the court or order is correct, although the reasons given by the trial court are erroneous. And that's exactly why this Court has jurisdiction to decide judgments as opposed to decisions. Initially, Judge Moore was asking your colleague on the other side about a different way of doing it, sort of under read, where assuming we would affirm the 56 F denial of those motions, we just look at the summary judgment motion and we do what Judge Benson appears to have failed to do, which is to evaluate that, see if there are any questions of that. It seems to me that that's not what you're advocating in red. It seems to me, I'm reading your brief, and you're asking that we do something beyond that kind of analysis. So obviously you think that's what's compelled. Do you understand what I'm saying? Is there daylight between the process that Judge Moore, at least, was hypothetically advancing for consideration and what you're advocating in your brief? In my way of thinking, I don't think there's really a difference in what we're seeking in our question and what Judge Moore had suggested in the question, but really the issue is, based on the procedure, what is the status of the contested facts? And in this case, under the Reed case, they are not contested, so you take the record as submitted by Clorox to determine whether or not a prima facie case has been set, and that's what we attempted to do, Your Honor, in the brief that was submitted to the court. And in fact, if I could address that issue. Just to make sure I understand, so procedurally you argue that if we affirm the 56F motion as being properly denied, then all we do as an appellate court at this point is assume or accept as true the facts alleged by Clorox and just assure that it has made a prima facie case of entitlement to summary judgment in light of those unopposed facts. That certainly would support what we're asking. I mean, we've taken into account even the late submission of the appellant and have taken that into account in considering a motion for summary judgment. I think all of it compels... What if we treat the original 56F as an opposition? They certainly did raise a number of facts that they thought could be in dispute. Well, what the original 56F did, and if you want the citation and the record for that, that's at A750, and that was a 56F that was submitted on February 23rd, which did comply with the requirement of an affidavit under Rule 56, so it did have that advantage. But where that was deficient was it certainly stated these 18 issues, but what they were, if you look at our motion for summary judgment, were simply stating our statements of uncontroverted fact in the form of a question and then sought the deposition of our expert, Dr. Rutella, in connection with each of those questions stated. I don't think that was sufficient under Rule 56F, and I believe Judge Benson's decision in that regard is correct. So it certainly identified some facts, but it didn't explain how, if they were able to obtain those facts from Dr. Rutella, how they would affect whether or not there were genuine issues of material fact. So they would have to state their conclusion? I mean, what the prior art teaches is a question of fact, so they would have to include in this affirmative statement that there is a question of fact, why? Correct. They would have to give their expert's opinion in it? Well, they would have to state, for example, there is one prior art reference that uses the phrase total chlorine, and their expert has submitted at some point a declaration that states that means, according to an ASTM standard, which we don't think applies, but there is a standard, and they want to argue from it, that total chlorine has to be, you have to modify the parts per million according to the ASTM standard. So in that case, there is a factual dispute as to what total chlorine would mean in that reference. But whether or not a reference teaches... Is that what you're talking about? No, this has to do with one of the prior art references, and we reference this argument in a footnote. Even if we took that first 56F motion and tried to convert it into a 56C opposition, that would be rather difficult, because those 18 points were not questions or statements of fact, they were just questions. They were just questions. Even the answer to those questions would be very difficult to assume at this point. Wouldn't it? The answer to those questions? Right. Well, I think one only needs to read the prior art references that were submitted to find out whether or not what we said was in the prior art statement was said. So, for example, did a prior art reference state that there was sodium hypochlorite in a concentration of 100 parts per million that was being applied using a modality of a spray, and we cited page references, that there's no dispute as to whether or not the prior art references teach that. And what the 56F motion did was it simply asked, do these references teach that? And one would need to only go to the reference to find out, in fact, it did. One question I have, though. On page 754 of the appendix, which is this 56F motion we're talking about, the first one that they filed, at the top it talks about Dr. Guttala's expert report, and it argues or advocates that his statements are conclusory, and then it says, these statements have been rebutted by Probert's expert witness, Dr. DeNiverse, and it says exhibit CC. I don't seem to have that in the appendix, but I guess what I need to know from you is, do they introduce by way of an exhibit, an expert report, which could put into dispute some of these facts? Do they put into evidence by way of the 56F motion? Yes. They say here there's an exhibit CC, which purports to be an expert report or an affidavit or something by Dr. DeNiverse. Yes. I don't know if I'm saying it right. But we don't have that. You only gave us an excerpted portion of all this, which is proper because you're supposed to give us the parts that you rely on, but I guess their argument is this 56F should be treated as an opposition and that arguably it raises genuine issues of material fact that will preclude summary judgment, and you said no, all it does is turn our statements into questions, and I'm just recognizing that it, on its face, appears to include some sort of expert report or affidavit or something, but that we don't have it, and so I'm trying to inquire from you as to whether or not that expert report actually does put into dispute some of these questions. Well, and let me answer your question this way. There is an expert report of Dr. DeNiverse that is submitted as part of the appendix. Oh, where is that? That is beginning at A695. Do you believe this would be the same thing that would have been Exhibit CC attached? Yeah, I think it is, Your Honor, and the same information really is included with the opposition that was late filed, and to answer your question on whether or not it brings into dispute, the issue in a Rule 56 motion is whether or not there are genuine disputes as to material issues of fact, and I can tell you with respect to prior references that clearly teach a range of sodium hypochlorite in even the range that they suggest ought to apply to the claims, there is no dispute as to that, even with respect to Dr. DeNiverse, and that was the point we were trying to make in our brief. There are five references that even if you take his reading, that you take what is stated in the prior reference and recalculate it to include a 5.2% concentration of sodium hypochlorite, that there are still prior references that anticipate, and so do they create genuine issues of material fact? I would suggest no, and Clorox has met its prima facie burden, and that is what we showed in our briefs. I've got many more questions. I've got 20 seconds. There's probably not much I can do other than thank the panel for their time. Thank you. I want to pick up on a statement that Mr. Wright just made that under the Glaxo case that the court has to look and see if the reasons that the district court decided were erroneous. Our simple position is no reasons were stated, and therefore it's entirely erroneous because it didn't state the reasons for saying whether in fact there was a prima facie case or not. And further to the points made with respect to Dr. Denevers, Dr. Denevers did in fact file an expert report in January of 2009 in which he went through each and every piece of prior art relied upon by Dr. Rutala and indicated why it did not teach the claim invention. Is that the document? Yes, it is. Yes, Exhibit CC, Judge Moore, is Exhibit CC to Defendant's Motion for Summary Judgment of Invalidity Based on Anticipation and Obviousness. Exhibit CC is Dr. Denevers' report. Is that the opposition to the summary judgment or is that part of the 56F? No.  And then we recited to it in our Rule 56F motion. So the point is those issues were before the court. There were issues of fact that had been presented to the court. The court didn't even mention them under either the Reed standard, the Mead standard, or under the Aaron Haas standard. And so our position is that at a minimum the court's July 17, 2009 order and the corresponding judgment should be vacated for proper proceedings below. Thank you. Thank you, Mr. Zinner. Case is submitted.